UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ASHLEY ROBERTS,<br><br>  Plaintiff,<br><br>  v.<br><br>IMAGE RECOVERY SERVICE, INC, and BRIDGECREST ACCEPTANCE CORPORATION,<br><br>  Defendants. | Case No. 24-cv-01119-JPG |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Image Recovery Service's Motion for Summary Judgment (Doc. 38) and Plaintiff Ashley Roberts's Motion for Partial Summary Judgment (Doc. 39). Defendant's motion asks the Court to grant summary judgment on all three of Plaintiff's claims. Plaintiff filed a response (Doc. 42), and Defendant filed a reply (Doc. 44). Plaintiff's motion asks the Court to enter summary judgment on liability for all three of her claims and on statutory damages under the Illinois Uniform Commercial Code ("Illinois UCC"). Defendant filed a reply (Doc. 41), and Plaintiff filed a response (Doc. 43).

## I.    BACKGROUND

On September 8, 2022, Plaintiff purchased a 2018 Chevrolet Equinox by obtaining an automobile loan from Bridgecrest Acceptance Corporation ("Bridgecrest"). She purchased the vehicle for her own personal use. The installment contract for the loan required Plaintiff to pay a total of $46,389.55—$24,817.13 was the amount financed and $21,572.42 was the finance charge—due and payable in 152 payments. By December 3, 2023, Plaintiff had fallen behind on her payments, and Defendant received an order from Bridgecrest to repossess Plaintiff's vehicle. Two days later, on December 5, 2023, Defendant's repossession agent, Josh Suda, was near

Shiloh, Illinois, and received a GPS notification that Plaintiff's vehicle had recently been pinged at a nearby Shell gas station. Mr. Suda drove to the Shell gas station, but did not locate Plaintiff's vehicle. He decided to search the surrounding area to see if the vehicle was nearby. During his search, he received a License Plate Reader hit on Plaintiff's vehicle and spotted it in the parking lot of a close by apartment complex.

Mr. Suda drove his tow truck to the apartment complex and backed it up to Plaintiff's vehicle. As he was backing up, he saw Plaintiff sitting inside of the vehicle. He was aware that it is dangerous to repossess an occupied vehicle. Despite this knowledge, he extended the grabber arms of his tow truck's wheel lift and closed them around the tires of Plaintiff's occupied vehicle. The parties disagree on whether Mr. Suda picked the vehicle up off the ground. Once he placed the grabbing arms around the vehicle's tires, Mr. Suda realized that he could not safely complete the repossession. He walked up to Plaintiff's driver seat window and told Plaintiff to get out of the vehicle. Plaintiff refused. Then, Mr. Suda called the Shiloh Police Department ("Shiloh PD"). Two officers from the Shiloh PD arrived at the scene. The officers were armed and in marked police vehicles. They repeatedly told Plaintiff to exit the vehicle. Plaintiff refused. Eventually one of the officers threatened to forcibly pull Plaintiff out of the vehicle. After the officer's threat, Plaintiff got out of the vehicle, and Mr. Suda finished the repossession.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56(a)); *accord Anderson v.*

*Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). As the Seventh Circuit has explained, "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [them] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [their] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

**III.  ANALYSIS**

    A.  <u>Count 2 – Illinois UCC:</u>

Illinois law permits a secured party to take possession of the collateral after default. 810 ILCS 5/9-609(a). It allows them to proceed in two ways: "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b). In other words, a secured party may not engage in self-help repossession "if doing so would cause a breach of the peace." *Mimnaugh v. Toyota Motor Credit Corp.*, No. 04 C 4607, 2005 WL 8179044, at *2 (N.D. Ill. July 11, 2005). The repossession in this case was without judicial process. Therefore, it was only permissible if it was accomplished without a breach of the peace.

Section 9-609 "does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts." Uniform Commercial Code Comment 3 to § 9-609. Illinois courts have concluded that "the term 'breach of the peace'

connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1073 (Ill. App. Ct. 1996). No violent conduct is necessary. *Id.* "The probability of violence at the time of or immediately prior to the repossession is sufficient." *Id.*

The Court concludes that Defendant repossessed Plaintiff's vehicle despite a breach of the peace. It finds there was a breach of the peace for two reasons. First, Mr. Suda started the repossession when he knew Plaintiff was sitting inside of the vehicle. The Court has not found an Illinois case that addresses whether repossession of an occupied vehicle is a breach of the peace, so it will look to decisions from other jurisdictions. *See Whitaker v. Wedbush Sec., Inc.*, 162 N.E.3d 269, 273 (Ill. 2020) ("[T]he Illinois UCC is based on the Uniform Commercial Code enacted by all 50 states, and therefore, decisions from other states and federal case law may be helpful in this analysis. In the absence of Illinois cases on the subject, Illinois courts have looked to UCC decisions from other jurisdictions."). There are many courts, including one within this Circuit, that have found it is a breach of the peace to repossess an occupied vehicle. *See e.g.*, *Shue v. JMAC Distribution, LLC.*, 745 F. Supp. 3d 3, 7–8 (D. Mass. 2024) (hooking vehicle to tow truck and proceeding to lift it up, with plaintiff in the vehicle, adequately denotes breach of the peace), *Hansen v. Santander Bank, N.A.*, 689 F. Supp. 3d 679, 691 (D. Minn. 2023) (debtor adequately alleged breach of the peace when she claimed repossession agent lifted up her car with her in it), *Nieves v. Able Auto Adjusters*, No. CV-18-8262, 2019 WL 13043035, at *1 (C.D. Cal. Mar. 12, 2019) (repossession agent's attempt to repossess a car while occupant is known to be in it could be breach of the peace), *Smith v. AFS Acceptance, LLC*, No 11 C 5340, 2012 WL 1969415, at *4 (N.D. Ill. June 1, 2012) (breach of the peace was sufficiently pled where

4

plaintiffs jumped into vehicle while it was being towed and repossession agent continued to tow vehicle), *Sinegal v. Big Horn Auto Sales, Inc.*, No. H-21-3102, 2022 WL 799908, at *3 (S.D. Tex. Mar. 16, 2022) (breach of the peace was sufficiently alleged where tow truck crashed into debtor's vehicle and then lifted it onto the tow truck with two occupants inside), *Thomas v. Gen. Motors Fin. Co., Inc.*, No. 5:19-CV-1418-DAE, 2020 WL 8771387, at *4 (W.D. Tex. Mar. 18, 2020) (defendant did not have present right to possession when it committed a breach of the peace by towing plaintiff's vehicle with her was inside of it). Beginning to repossess Plaintiff's vehicle while it was occupied "plainly constitute[s] the kind of hazard resulting from confrontation during self-help repossession that the UCC seeks to avoid." *Shue*, 745 F. Supp. 3d at 8. It creates a high risk of injury and increases the probability for violence. Thus, the Court finds that Mr. Suda starting to repossess Plaintiff's vehicle while it was occupied is a breach of the peace as defined by Section 9-609.

      Second, two police officers from the Shiloh PD assisted Mr. Suda in the repossession of Plaintiff's vehicle. Illinois courts have not addressed whether police involvement in a self-help repossession is a breach of the peace. However, the Court is satisfied that an Illinois court would hold that it is. Comment 3 to § 9-609 of the Uniform Commercial Code states that it "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer." Many jurisdictions have held that the assistance of law enforcement officers in a self-help repossession constitutes a breach of the peace. *See e.g.*, *In re MacLeod*, 118 B.R. 1, 3 (Bankr. D.N.H. 1990) (repossession accomplished with the assistance of a uniformed, off-duty police officer was not lawful "self-help repossession"), *Waisner v. Jones*, 755 P.2d 598, 603 (N.M. 1988) (presence of military security police during repossessor's

attempted self-help repossession of collateral on military base was not permissible), *Walker v. Walthall*, 588 P.2d 863, 866 (Ariz. Ct. App. 1978) (the introduction of law enforcement officers into a self-help repossession, regardless of their degree of participation in the events, invalidates the repossession), *First and Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) (presence of a deputy sheriff necessary to prevent violence demonstrated that self-help repossession was a breach of the peace), *Stone Mach. Co. v. Kessler*, 463 P.2d 651, 655 (Wash. Ct. App. 1970) (sheriff's aid in repossession of tractor amounted to constructive force, intimidation and oppression constituting breach of the peace).

These courts reason that, the presence of a police officer, by itself, "is sufficient to chill the legitimate exercise of the defaulting party's rights." *Waisner,* 755 P.2d at 602; *see also MacLeod*, 118 B.R. at 3 (reasoning that "if a creditor can argue that they have avoided a breach of the peace by use of law enforcement personnel, and then contend they are in a position for self-help repossession, they effectively circumvent the intent of the statute which is to give the debtor a right to object without the presence of state action"), *Stone Mach. Co.*, 463 P.2d at 655 (noting that the effect of sheriff's involvement in repossession was to prevent defendant "from exercising his right to resist by all lawful and reasonable means a nonjudicial take-over" and "[t]o put a stamp of approval upon this method of repossession would be to completely circumvent the purpose and intent of the statute").

The Court finds that an Illinois court would agree with this reasoning. In *Murray v. Poani*, the plaintiffs brought suit under 42 U.S.C. § 1983 against a police officer for his involvement in a vehicle repossession that they alleged violated their constitutional rights. 980 N.E.2d 1275, 1277 (Ill. App. Ct. 2012). In the case, the police officer threatened to arrest one of

the plaintiffs if she continued to interfere with the repossession and ordered her to turn over the vehicle's keys. *Id.* at 1278. The crucial question was whether the officer's involvement in the repossession constituted state action. *Id.* at 1279. Although the courts focus was on whether there was state action, it made statements in the decision that indicate an Illinois court would hold that the assistance of law enforcement in a self-help repossession constitutes a breach of the peace. Specifically, the court stated that:

> a debtor's 'objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess. A police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting.'

*Id.* at 1279–80. It also noted that "a police officer must not act as a 'curbside courtroom' in resolving a dispute between a repossessor and debtor as this is not the proper function of the police" and "such a dispute should be resolved by the courts, not a police officer." *Id.* at 1283. These arguments are very similar to those employed by courts to determine that the assistance of a police officer in a self-help repossession is a breach of the peace. Therefore, the Court concludes that the assistance of Shiloh PD officers in the repossession of Plaintiff's vehicle is a breach of the peace under Section 9-609. Since the Court finds that there was a breach of the peace, Defendant was not entitled to engage in self-help repossession of Plaintiff's vehicle. As such, Plaintiff is entitled to summary judgment as to liability on her Illinois UCC claim.

Because Plaintiff is entitled to summary judgment as to liability on this claim, she is also entitled to statutory damages. The Illinois UCC has a specific formula for calculating statutory damages where the collateral is consumer goods. *See* 810 ILCS 5/9-625(c)(2). "Consumer

7

goods" is defined as "goods that are used or bought for use primarily for personal, family, or household purposes." 810 ILCS 5/9-102(a)(23). "Goods" are "all things that are movable when a security interest attaches." 810 ILCS 5/9-102(a)(44). The collateral in this case is 2018 Chevrolet Equinox that Plaintiff purchased for her own personal use. Therefore, the collateral is a consumer good, and the statutory damages are calculated according to the formula in 810 ILCS 5/9-625(c)(2). That provision states:

> if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this Part may recover in an individual action for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price.

*Id.* In other words, the statutory damages are determined by taking "the cost of obtaining financing plus ten percent of the original cost of the collateral." *Yazzie v. Gurley Motor Co.*, CIV 14-555 JAP/SCY, 2016 WL 7477770, at *8 (D.N.M. Mar. 8, 2016). Here, the service charge is the $21,572.42 in interest that Bridgecrest charged Plaintiff as part of her automobile loan. *See In re Schwalb*, 347 B.R. 726, 755 (Bankr. D. Nev. 2006) (interpreting credit service charge to mean all paid and accrued interest), *Knights of Colombus Credit Union v. Stock*, 814 S.W.2d 427, 432 (Tex. App. 1991) (stating that the credit service charge is the interest that accrues over the life of the loan). The original cost of the collateral is $24,817.13. 10% of that amount is $2,481.71. Accordingly, under the Illinois UCC, Plaintiff is entitled to statutory damages of $24,054.13.

    B.  <u>Count 1 – Fair Debt Collection Practices Act ("FDCPA")</u>:

Congress passed the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). The Act begins with a broad prohibition: "A

8

debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. After the main clause, the statute lists eight specific prohibited acts. *Id.* Plaintiff alleges Defendant violated the sixth, which prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Id.* § 1692f(6). "To show a violation of the FDCPA, the plaintiff must show (1) that the plaintiff is a 'consumer' within the meaning of the statute; (2) that the defendant collecting the debt is a 'debt collector' within the meaning of the statute; and (3) that the defendant has violated the FDCPA by act or omission." *Anderson v. Leading Edge Recovery Sols., LLC*, No. 11-609-GPM, 2012 WL 4506012, at *4 n.1 (S.D. Ill. Sept. 30, 2012).

Plaintiff has proven all three elements. First, Plaintiff is a "consumer" within the meaning of the statute. The Act defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). The repossession at issue in this case was of a 2018 Chevrolet Equinox. Plaintiff purchased the vehicle with an automobile loan from Bridgecrest. She purchased it for her own personal use, not for any business purpose. Plaintiff is a consumer under the FDCPA.

Second, Defendant is a debt collector within the meaning of the statute. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). For claims under section 1692f(6), the term "includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* Plaintiff has asserted a claim under section 1692f(6), and for the purpose of that section, repossessors qualify as debt collectors. *Richards v. PAR, Inc.*, 954 F.3d 965, 967 (7th Cir. 2020). Defendant is a repossession agency, whose primary business purpose is the repossession of collateral on behalf of secured creditors. Defendant is a debt collector under the FDCPA.

Third, the defendant has violated the FDCPA. "[A] repossession without judicial process violates § 1692f(6)(A) *unless* the property is collateral under an enforceable security interest and the repossessor has a 'present right to possession' of the property." *Id.* at 968. The Act "does not define the phrase 'present right to possession.'" *Id.* "Repossession rights are governed by the relevant state's property and contract law," so the Court "must look to state law to determine whether a repossessor had a present right to possess the property at the time it was seized." *Id.* Illinois law only permits self-help repossession if it is completed without a breach of the peace. *See* 810 ILCS 5/9-609(b). Here, there was a breach of the peace, so Defendant did not have a present right to possess the vehicle at the time it was seized. Based on the undisputed facts, Plaintiff has proven all elements required for recovery under section 1692f. Accordingly, Plaintiff is entitled to summary judgment as to liability on her FDCPA claim.

C. Count 3 – Conversion:

"To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he

made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Illinois courts have determined that a debtor in default does not have an absolute and unconditional right to the immediate possession of the collateral. *See First Chicago Gary-Wheaton Bank v. Gaughan*, 655 N.E.2d 936, 944 (Ill. App. Ct. 1995) (debtor failed to make timely payments on the automobile loan, so even though the trial court ultimately found that the creditor wrongfully repossessed the vehicle, debtor's right to unconditional possession of the vehicle was not so clear as to give rise to an action of conversion); *see also Andrews v. Mid-Am. Bank & Tr. Co. of Fairview Heights*, 503 N.E.2d 1120, 1122 (Ill. App. Ct. 1987), *Voutiritsas v. Intercounty Title Co. of Illinois*, 664 N.E.2d 170, 181 (Ill. App. Ct. 1996), *First Nat. Bank of Thomasboro v. Lachenmyer*, 476 N.E.2d 755, 758 (Ill. App. Ct. 1985). In this case, Plaintiff was in default on her automobile loan. Due to Plaintiff's default, Bridgecrest had a right to repossess her vehicle. Even though Defendant wrongfully repossessed Plaintiff's vehicle by completing a self-help repossession despite a breach of the peace, Plaintiff cannot prove that she had an absolute and unconditional right to possession of the vehicle. As such, Defendant is entitled to summary judgment on the conversion claim.

IV.     **CONCLUSION**

Defendant unlawfully repossessed Plaintiff's vehicle because it completed a self-help repossession despite a breach of the peace. Therefore, Plaintiff's motion (Doc. 39) is GRANTED and Defendant's motion (Doc. 38) is DENIED as to Count 2. Due to Defendant's violation of the Illinois UCC, Plaintiff entitled to statutory damages in the amount of $24,054.13. Defendant's unlawful repossession also constituted a violation of the FDCPA. Accordingly, Plaintiff's motion

(Doc. 39) is GRANTED and Defendant's motion (Doc. 38) is DENIED as to Count 1. Despite the unlawful repossession, Plaintiff is unable to make out a claim for conversion. Since she was in default on her automobile loan, she did not have an absolute and unconditional right to possession of the vehicle. As such, Plaintiff's motion (Doc. 39) is DENIED and Defendant's motion (Doc. 38) is GRANTED with respect to Count 3.

**IT IS SO ORDERED.**
**DATED**:   **October 10, 2025**

                                                  s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **United States District Judge**